**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

TONI JO MCCONNELL,

                        Plaintiff,

       - v -                                 Civ. No. 6:03-CV-521
                                                  (TJM/RFT)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

---

**APPEARANCES:**                                   **OF COUNSEL:**

CONBOY, MCKAY, BACHMAN & KENDALL, LLP      PETER L. WALTON, ESQ.
Attorney for Plaintiff
407 Sherman Street
Watertown, NY 13601

HON. GLENN T. SUDDABY                        WILLIAM H. PEASE
United States Attorney for the Northern District of New York   Assistant United States Attorney
Attorney for Defendant
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

In this action, Plaintiff Toni Jo McConnell moves, pursuant to 42 U.S.C. § 405(g), for review

of a decision by the Commissioner of Social Security denying her application for disability insurance

benefits.[1]  Based upon the following discussion, this Court recommends that the Commissioner's

decision denying Social Security benefits be **affirmed**.

---

[1] This case has proceeded in accordance with General Order 18 which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 9 & 12. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

## I. BACKGROUND

### A. Facts

Plaintiff was born on June 20, 1957, and was forty-four years old at the time the Administrative Law Judge (ALJ) rendered his decision.  Dkt. No. 3, Admin. Tr. [hereinafter "Tr."] at pp. 16 & 34. Plaintiff completed nine years of schooling, did not receive her general education diploma (GED), and has past work experience as a factory laborer.  *Id.* at pp. 16, 36, 112, & 117.  The facts set forth in Plaintiff's Brief, under the heading "STATEMENT OF THE CASE" (Dkt No. 9 at pp. 2-12), as supplemented by Defendant's Brief, under the heading "THE ADMINISTRATIVE RECORD" (Dkt. No. 12 at pp. 2-12) are hereby adopted by the Court.  Generally, McConnell alleges a disability due to neck, shoulder, and back pain as well as carpal tunnel syndrome (CTS).  *Id.* at pp. 16-17 & 111.

### B. Procedural History

On June 7, 2000, McConnell filed an application for disability insurance benefits alleging a disability onset date of March 6, 2000.  Tr. at pp. 102-04.  The application was denied initially and on reconsideration.  *Id.* at pp. 88-93 & 95-97.  On August 22, 2001, a Hearing was held before ALJ John M. Lischak, and, on December 7, 2001, the ALJ issued an unfavorable decision against McConnell. *Id.* at pp. 15-21 & 28-87.  On February 25, 2003, the Appeals Council concluded there was no basis under the Regulations to grant Plaintiff's request for review, thus rendering the ALJ's decision the final determination of the Commissioner.  *Id.* at pp. 5-6.  Exhausting all her options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the role of this Court is not to employ a *de novo* review, but rather

*-2-*

to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B. Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimants physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis

set forth in the Social Security Administration Regulations. 20 C.F.R. § 404.1520. At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id.* at § 404.1520(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id.* If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity (RFC)[2] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. § 404.1520(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 404.1520(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at

---

[2] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. § 404.1545(a).

467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. § 404.1520(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ Lischak's Findings

McConnell was the only witness to testify at the Hearing. Tr. at pp. 28-87. In addition to such testimony, the ALJ had McConnell's medical records consisting of treatment reports and opinions from various treating, consultive, and/or non-examining physicians, including, 1) Edward N. Powell, M.D., Treating Orthopedic Physician; 2) Michael P. Owen, M.D.; 3) Steven B. Fish, M.D., Treating Physician; 4) Arthur C. Peckham, Jr., M.D., Treating Physician; 5) Jan K. Turcotte, M.D.; 6) Edmund J. Roache, M.D.; 7) Douglas E. Sloan, D.O., Consultative Examiner; 8) C.R. Manley, M.D., Non-Examining Agency Residual Functional Capacity Assessment; 9) Naveed Siddiqi, M.D., Non-Examining Agency Residual Functional Capacity Assessment; and 10) Barbara O'Brien, Registered Nurse and Advanced Nurse Practitioner. *Id.* at pp. 146-237.

The ALJ stated that McConnell met the disability requirements for a period of disability and Disability Insurance Benefits and is insured for benefits through the date of the decision. Using the five-step disability evaluation, ALJ Lischak found that 1) McConnell had not engaged in any substantial gainful activity since March 6, 2000, the alleged onset disability date; 2) she has severe

medically determinable impairments, namely, degenerative changes of the cervical spine and hypothyroidism with enlarged thyroid glands, but her bilateral CTS is a non-severe impairment; 3) her severe impairments do not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation No. 4; 4) she has the residual functional capacity to perform a wide range of light and sedentary work and as such cannot perform her past relevant work as a factor laborer; and 5) utilizing Medical Vocational Rules 202.18 and 201.25, concluded that McConnell is not disabled. *Id.* at pp. 19-21. After reviewing the administrative transcript, the Court finds that the ALJ applied the correct legal standards and his findings are supported by substantial evidence of record.

### D. McConnell's Contentions

Plaintiff contends that the ALJ's decision denying benefits should be reversed because (1) at Step Two, the ALJ erred by finding that her CTS was not severe and when he failed to consider her knee impairment as a severe impairment; (2) the ALJ's RFC assessment is not supported by the medical evidence and in rendering such RFC, the ALJ failed to accord proper weight to her Treating Physicians' opinions as well as her own subjective complaints regarding her symptoms; and (3) at Step Five, the ALJ erred by relying solely upon the Medical-Vocational Grid Guidelines instead of procuring the testimony of a vocational expert. Dkt. No. 9. The Court will consider each of McConnell's contentions.

### 1. Step Two – Severe Impairments

The ALJ found that McConnell's neck, shoulder, and back condition as well as hypothyroidism significantly limited her ability to perform basic work activities and were thus deemed severe impairments. Tr. at p. 17. Plaintiff states that the ALJ erred in his severity evaluation at Step Two by failing to assess her CTS and left knee injury as a severe conditions. Dkt. No. 9, Pl.'s Br. at pp. 17-20.

At Step Two, the ALJ must determine whether an individual has an impairment or combination of impairments that are severe. 20 C.F.R. § 404.1520. The Second Circuit has warned that the Step Two analysis may not do more than "screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) (quoted in *de Roman v. Barnhart*, 2003 WL 21511160, at *11 (S.D.N.Y. July 2, 2003)). An impairment is <u>not severe</u> at Step Two if it does not significantly limit a claimant's ability to do basic work activities. 20 C.F.R. § 404.1521(a). The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include,

> (1) Physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b); *see also* Social Security Ruling 85-28, 1985 WL 56856, at *3-4, *Titles II and XVI: Medical Impairments That Are Not Severe* (S.S.A. 1985).

If a claimant has multiple impairments, the combined effect of all impairments should be considered "without regard as to whether any such impairment, if considered separately, would be of sufficient severity." *Id.* at § 404.1523; 42 U.S.C. § 423(d)(2)(B); *see also Schulte v. Apfel*, 2000 WL 362025 (W.D.N.Y. Mar. 31, 2000). "A finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Social Security Ruling 85-28, 1985 WL 56856, at *3, *Titles II and XVI: Medical Impairments That Are Not Severe* (S.S.A. 1985)).

### a. CTS

With regard to Plaintiff's bilateral CTS, ALJ Lischak acknowledged her history of this

condition and noted she underwent corrective surgeries in 1998. *Id.* at pp. 17, 148 & 161-67. The ALJ found that the CTS does not significantly limit Plaintiff and there is no evidence that she receives ongoing treatment for the condition. *Id.* at p. 17. Thus, the ALJ stated this impairment was not severe. *Id.*

McConnell's bilateral CTS condition and corrective surgeries predate the alleged onset disability date of March 6, 2000. It appears that McConnell began experiencing symptoms of CTS as early as 1986. *Id.* at pp. 39 & 146-47. On March 19, 1998, Plaintiff was examined by Edward N. Powell, M.D., a physician with the North Country Orthopaedic Group, P.C., who, at the time, was her treating orthopedic physician. *Id.* at p. 146. On examination, Plaintiff had a positive Tinel's[3] at the elbow and wrists, bilaterally. *Id.* With regard to her wrist complaints, Dr. Powell's impression was double crush syndrome with carpal tunnel bilaterally. *Id.* A Nerve Conduction Study, completed on April 8, 1998, confirmed that Plaintiff suffered from bilateral CTS. *Id.* at p. 147. Thereafter, McConnell underwent right and left carpal tunnel release surgeries on May 14, 1998, and July 7, 1998, respectively. *Id.* at pp. 161-67. Both surgeries were performed without complications and McConnell recovered as expected. *Id.*

In August 1998, Plaintiff reported that she fell twice and contused her left hand. *Id.* at p. 149. Dr. Powell found that the CTS settled down and that she would benefit from occupational therapy and anti-inflammatory medication. *Id.* On September 21, 1998, Dr. Powell determined Plaintiff's left hand was better and she could return to work. *Id.* By June 2, 1999, McConnell had full range of motion of her wrists, her scars were well healed, and she displayed a "negative Tinel's excellent grip." *Id.*

---

[3] Tinel's sign is a "tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve. It indicates a partial lesion or the beginning regeneration of the nerve. Called also formication sign and distal tingling on percussion." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1527 (28th ed. 1994).

Though Plaintiff reported she occasionally experienced some numbness, she indicated she did not feel anymore pain. Dr. Powell opined that McConnell had an almost complete resolution of her symptoms and zero percent loss of use. *Id.* Notwithstanding, on August 3, 1999, Plaintiff returned to Dr. Powell stating her neck and wrists were bothering her. *Id.* On examination, Plaintiff had no atrophy, but exhibited some irritability in the ulnar nerves and median nerves bilaterally. *Id.* at pp. 149-50. Finding the wrist exam to be benign, Dr. Powell indicated the difficulty involved in targeting the cause of her symptoms and wondered whether they stemmed from her neck pain. *Id.* at p. 150. Dr. Powell advised Plaintiff to use splints and over-the-counter Aleve for pain relief. *Id.*

On October 19, 1999, Plaintiff was examined by Steven B. Fish, M.D., an orthopedist from the same medical group as Dr. Powell. *Id.* at p. 151. McConnell reported she injured her hand two days earlier when she was wrestling with her son. X-rays revealed a right distal hamate fracture. *Id.* On examination Dr. Fish noted mild swelling, but her wrist range of motion was good. *Id.* He prescribed a short arm cast and told her she could continue working. *Id.* By November 24, 1999, the fracture had healed and Plaintiff had full range of motion of her wrists. *Id.* at p. 152. On January 3, 2000, Plaintiff skipped her appointment with Dr. Fish stating she was doing fine. *Id.* at p. 155. Then, on July 27, 2000, McConnell was examined by Douglas E. Sloan, D.O., a consultive orthopedist. *Id.* at pp. 183-90. On examination, Dr. Sloan found good range of motion of Plaintiff's wrists and hands and noted there was negative bilateral Tinel's sign. *Id.* at pp. 184-85. She further exhibited good grip strength and no sensory or reflex deficits. *Id.* at p. 185.

The mere presence of an impairment or establishment of treatment for an impairment is not enough to support a disability determination. *See, e.g.*, *Burger v. Barnhart*, 476 F. Supp. 2d 248, 254 (W.D.N.Y. 2007). In reviewing the treatment set forth above, the Court finds there to be a general

*-9-*

consensus among the treating and consulting physicians as to the non-limiting effects of Plaintiff's bilateral CTS. Further support for this conclusion is derived from Plaintiff's subjective statements. At the ALJ Hearing, Plaintiff testified that though she was not one hundred percent after her wrist surgeries, she was feeling a lot better. *Id.* at p. 80. She noted that she sometimes experienced pain in her hands, but such pain only lasted for a few minutes and she is able to do most of her daily activities. *Id.* at pp. 37, 57-63, 65-69, 78-79 & 82-85. In fact, Plaintiff's own account of her daily activities belie her contention that her CTS is a severe impairment. Plaintiff reported that she cooked, washed dishes, dusted, made the beds, swept lightly, did laundry, performed minor household repairs such as changing a lightbulb, took care of her personal hygiene, and tended to her youngest child. *Id.* at pp. 65-67, 131, & 134. Based upon the medical opinions and Plaintiff's subjective statements, the Court finds there is substantial evidence to support the ALJ's conclusion that McConnell's CTS does not affect her ability to perform basic work activities and therefore is not a severe impairment.

### *2. Knee Impairment*

Plaintiff argues that the ALJ erred at Step Two when he failed to consider and/or make reference to her left knee impairment. It appears that, in September 2000, during the pendency of Plaintiff's Social Security Application, Plaintiff injured her knee after wrestling with her son. Tr. at p. 192. On September 28, 2000, Plaintiff was examined by Arthur C. Peckham, Jr., M.D., a physician with the North Country Orthopaedic Group, P.C. *Id.* X-rays were taken and Dr. Peckham assessed that there was no evidence of obvious fractures in or about the knee. *Id.* He further indicated that overall alignment and joint spaces were normal. *Id.* At that point, because Dr. Peckham felt Plaintiff's condition was improving on its own, he did not prescribe any form of treatment. *Id.* Also, a

sedimentation factor test was not indicative of polymyalgia rheumatica[4]. *Id.* at pp. 192-93. Then, on

November 17, 2000, Dr. Peckham examined the results of a magnetic resonance image (MRI) taken

of Plaintiff's knee. Based upon his review, Dr. Peckham determined that there was no significant tear

and that the knee should just be monitored. *Id.* at pp. 195 & 238. There does not appear to be any

further complaints or treatment of this condition thereafter.

Of particular importance with regard to Plaintiff's knee impairment allegation is the absence

of any prompting on Plaintiff's behalf to have the ALJ consider her knee impairment as a basis for

finding her disabled under the Act. After receiving notice that her disability claim had been denied

initially, McConnell sought reconsideration and completed a "Reconsideration Disability Report,"

dated October 11, 2000. Tr. at pp. 94 & 125-28. No where in this Report does McConnell mention the

knee injury she sustained during the previous month. *See id.* at p. 125 (specifically referencing that her

neck, shoulders, hands, feet, and hip conditions have worsened and leaving blank the question regarding

whether she has any additional injury that the SSA should be aware of). Included on that Form is a

section seeking information regarding her physicians and the reasons for her visits; McConnell listed

Dr. Peckham, but stated he treats her every month since March for her neck and shoulder conditions.

*Id.* at p. 126. Thus, she did not provide the SSA with information regarding treatment she received with

regard to her knee impairment. Then, after her claim had been denied on reconsideration, McConnell

submitted a "Request for Hearing by Administrative Law Judge" Form, dated December 29, 2000. *Id.*

at p. 98. In support of her request for the Hearing, McConnell indicated she experiences difficulty

moving her arms and shoulders and that she has problems with her feet due to her thyroid problem. *Id.*

---

[4] Polymyalgia rheumatica is "a syndrome in the elderly characterized by proximal joint and muscle pain, high erythrocyte sedimentation rate, and a self-limiting course." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1329 (28th ed. 1994).

Yet again, no mention is made of her knee impairment. Similarly, on a Form entitled, "Claimant's Statement When Request for Hearing is Filed and the Issue is Disability," McConnell makes no mention of her knee impairment. *Id.* at p. 137.

Then, during the Hearing, Plaintiff mentioned several of her ailments including neck, wrist, shoulder pain, hypothyroidism, and even red, itchy feet, but failed to mention the knee injury. Even when prompted by the ALJ and then by her own attorney to discuss <u>any</u> medical conditions that caused her pain, the knee injury was never brought to light. *See generally id.* at pp. 44-64 & 74-87. Despite Plaintiff's omission in specifically referencing her knee impairment to support her disability claim, we acknowledge there was treatment notes contained in the medical records which would alert the ALJ to the existence of such impairment. Indeed, it is clear that the ALJ did consider the knee impairment since he makes specific reference to a treatment report furnished by Dr. Peckham wherein treatment of the knee was being rendered. *See id.* at p. 18 (citing to Tr. at p. 194). Nevertheless, in light of the benign tests and treatment of such impairment, as set forth above, no error was committed when the ALJ failed to include the knee impairment as part of his Step Two analysis. This is further supported by Plaintiff's own testimony which illustrated that she experienced few, if any, functional limitations as a result of her knee injury. She testified that she was able to stoop, crouch, kneel, crawl, and climb stairs. *Id.* at pp. 60 & 82-83. And, when questioned about her ability to crawl underneath a table, Plaintiff observed only that such a move would hurt her neck. *Id.* at pp. 82-83.

Based on the above discussion, we find that the objective medical evidence and Plaintiff's statements demonstrate that McConnell's knee injury was not severe and did not impair Plaintiff's daily and work activities. Accordingly, the ALJ did not err when he failed to consider the left knee injury as an impairment.

## 2. RFC Determination

As part of the disability analysis, the Commissioner assesses a claimant's residual functional capacity as a basis for determining the particular types of work the claimant may be able to perform despite the existence of physical and/or mental impairments. *See* 20 C.F.R. § 404.1545(a); 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(c). In qualifying work in the national economy, the Regulations classify and define jobs as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. Then, based upon such classification, if the applicant can still perform the kind of work he or she performed in the past, they are deemed not disabled. *Id.* at § 404.1520(e). In determining a claimant's RFC, the ALJ can consider a variety of factors including a physician's observations or opinions regarding limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. *Id.* at § 404.1545(a).

In assessing the medical evidence, ALJ Lischak found McConnell had a RFC consistent with a wide range of work at the light or sedentary exertional levels.[5] Specifically, the ALJ determined that McConnell

---

[5] The Social Security Regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b)

Sedentary work involves:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

*Id.* at § 404.1567(a).

> has the residual functional capacity to perform work that does not require lifting and/or carrying more than 20 pounds on an occasional basis or ten pounds on a frequent basis, standing and/or walking more than about six hours in an eight-hour work day, sitting more than about six hours in an eight-hour work day, pushing and/or pulling more than about 20 pounds on an occasional basis or ten pounds on a frequent basis, reaching on more than a limited basis, or climbing, balancing, stooping, kneeling, crouching, or crawling on more than an occasional basis.

Tr. at p. 18.

In making this RFC determination, the ALJ relied upon the Residual Functional Capacity Assessments completed by Non-Examining Agency Physicians C.R. Manley, M.D., and Naveed Siddiqi, M.D. *Id.* at pp. 18 & 199-205. Plaintiff asserts that this RFC determination is not supported by the evidence and that in rendering such determination, the ALJ failed to give proper consideration and weight to her Treating Physicians' opinions as well as her own statements regarding her symptoms.

### a. *Treating Physician Rule*

Plaintiff claims that the ALJ failed to abide by the Treating Physician Rule when he failed to accord proper weight to the opinion of her treating physician, Dr. Peckham, and instead gave substantial weight to the opinions of the non-examining agency physicians. Pl.'s Br. at pp. 12-17. Plaintiff further criticizes the ALJ's omission of any reference to the opinions rendered by Douglas E. Sloan, D.O., and Barbara O'Brien, N.P. *Id.*

The treating physician doctrine recognizes that a claimant's treating sources, which in most cases are medical professionals, are more apt to "provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical findings" as opposed to an evaluation of a one-time non-examining, non-treating physician. 20 C.F.R. § 404.1527(d)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993). Under the Regulations, a treating physician's opinion as to the nature and severity of a claimant's impairment is entitled to "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999).[6] However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1527(e)(1) (Commissioner provides the ultimate decision on disability). Furthermore, when weighing all medical opinions and assessing what weight to accord, "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof" are considerations. *Schisler v. Sullivan*, 3 F.3d at 568; 20 C.F.R. §§ 404.1527(d)(1)-(6); *see also Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998). In the event the ALJ does not give controlling weight to the treating physician, he must specifically state the reasons for doing so. 20 C.F.R. § 404.1527(d)(2).

In this case, the ALJ gave Drs. Manley's and Siddiqi's RFC assessment substantial weight because it was "well supported by reference to objective medical findings in the record." Tr. at p. 17. On the other hand, as the ALJ explained, the opinion rendered by Dr. Peckham that Plaintiff was "in a state of 'total disability[,]'" was not afforded controlling nor substantial weight because it is not supported by objective medical findings and because a determination of disability is within the purview of the ALJ, not the doctor. *Id.* at p. 18. This is a correct statement of the legal principles the ALJ is bound to apply. 20 C.F.R. § 404.1527(e)(1) (Commissioner provides the ultimate decision on disability).

During the Hearing, ALJ Lischak stated he would leave the record open for a period of time in

---

[6] A "treating physician" is the claimant's "own physician, osteopath or psychologist (including outpatient clinic and health maintenance organization) who has provided the individual with medical treatment or evaluation, and who has or had an ongoing treatment and physician-patient relationship with the individual." *Jones v. Apfel*, 66 F. Supp. 2d 518, 524-25 (S.D.N.Y. 1999) (quoting *Schisler v. Bowen*, 851 F.2d 43, 46 (2d Cir. 1988)).

order to allow Plaintiff to submit additional medical evidence, including a RFC form to be completed by Dr. Peckham. *See* Tr. at p. 230. Plaintiff's attorney submitted a RFC form to Dr. Peckham, however, Dr. Peckham was unwilling to complete it. *Id.* at pp. 232 & 237. Dr. Peckham noted on that form that a functional capacity evaluation would be more appropriate, he did not have a definitive diagnosis, and was not actively treating McConnell. *Id.* Thus, there is no opinion in the record rendered by Dr. Peckham regarding the nature and severity of McConnell's impairment such that the ALJ could afford controlling weight therewith. Furthermore, Plaintiff's insistence that Dr. Peckham opined that she was in a state of "total disability" is a misstatement of the medical record. Pl.'s Br. at p. 12. In fact, Dr. Peckham's statement was not an opinion on disability, but rather was a recommendation that Plaintiff remain out of work on "total disability" while she underwent diagnostic testing for her knee injury. Tr. at p. 194. Incidentally, such diagnostic testing failed to yield definitive findings. A sedimentation factor test was not indicative of polymyalgia rheumatica, x-rays of her left knee were negative, and after reviewing a subsequent MRI of the left knee, Dr. Peckham did not feel that anything was wrong with the knee. *Id.* at pp. 192-93 & 195. It is also worth noting that such statement was rendered with regard to treatment of a knee injury, which was not a severe injury and thus would not form the basis for disability in the Social Security context. And, finally, with regard to Dr. Peckham's "total disability" statement, even if the Court adopts Plaintiff's proffered interpretation, such opinion would not be entitled to controlling weight as it is an opinion on a matter reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1) (Commissioner provides the ultimate decision on disability). As such, the ALJ committed no legal error by disregarding such statement.

Plaintiff also contends that the ALJ erred when he failed to mention the opinion rendered by Registered Nurse and Advanced Nurse Practitioner Barbara O'Brien. This claim is without merit since

*-16-*

as a nurse practitioner, Ms. O'Brien does not constitute an "acceptable medical source" whose opinion would be used to establish the existence of a medical impairment. 20 C.F.R. § 404.1513(a). A nurse practitioner instead is considered under the category of "other sources" which the Commissioner *may* use to show "the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work." *Id.* at § 404.1513(d). Nevertheless, in the event such opinion differed from acceptable medical sources, it would not be given controlling weight under the Regulations. In any event, aside from her general recitation of Plaintiff's height, weight, etc., Ms. O'Brien's treatment notes are a mere regurgitation of Plaintiff's medical treatment history, subjective complaints of symptoms, and what type of tests will be ordered. *See* Tr. at pp. 196-98 & 213-22. Though on December 8, 2000, Ms. O'Brien noted "extremely" limited range of motion of McConnell's head and neck, and further observed "a response of major proportion in a spasm which brought [McConnell's] shoulder up to her ear level," at no point does Ms. O'Brien render an opinion as to the physical limitations imposed by Plaintiff's thyroid condition. Thus, we find that no error was committed when the ALJ failed to make specific reference to Ms. O'Brien's statements.

As for Drs. Manley's and Siddiqi's evaluation being given substantial weight, we find that the ALJ applied the correct legal principles and such determination is supported by the record. Agency medical consultants are considered highly qualified physicians and experts in social security disability evaluations. *See* 20 C.F.R. § 404.1527(f)(2)(i). Thus, a treating physician's opinion may be trumped by the opinion of the state agency physician, a non-examining source, if such opinion is supported by evidence in the record. *See generally* 20 C.F.R. § 404.1527(f); *see also Kiggins v. Barnhart*, 2004 WL 1124169, at *12 (S.D.N.Y. May 20, 2004) (citing *Schisler v. Sullivan* 3 F.3d 563, 567-68 (2d Cir. 1993) & *Diaz v. Apfel*, 59 F.3d 307, 313 n.5 (2d Cir. 1995)); *Punch v. Barnhart*, 2002 WL 1033543, at *12

(S.D.N.Y. May 21, 2002) (citing, *inter alia*, *Richardson v. Perales*, 402 U.S. 389, 402 (1971) & 20 C.F.R. § 404.1527).

      The agency physicians opined that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand, walk, and/or sit for six hours in an eight-hour day, and was unlimited in her ability to push and/or pull. Tr. at p. 200. Furthermore, Plaintiff was deemed to have occasional postural limitations, such as climbing, balancing, stooping, kneeling, crouching, and crawling, and she was determined to be limited in reaching in all directions. *Id.* at p. 201. She was determined to be unlimited in other manipulative functions such as handling, fingering, and feeling, and she displayed no visual, communicative, nor environmental limitations. *Id.* at pp. 202-03. In rendering this assessment, the physicians relied upon the consultive examination conducted by Dr. Sloan as well as the claimant's subjective complaints. *Id.* at pp. 183-87 & 200-04. Ironically, Plaintiff complains that the ALJ failed to allot any weight or consideration to Dr. Sloan's opinions and that such constituted error. However, by according substantial weight to the agency physicians' opinions, the ALJ was similarly according substantial weight to the opinion which formed the basis of their assessments, namely, Dr. Sloan's opinion. *Cf. Jones v. Barnhart*, 2004 WL 3158536, at *6 (E.D.N.Y. Feb. 3, 2004) (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984), for the proposition that an ALJ is not obligated to "specifically address each piece of evidence in his decision"). On physical examination, Dr. Sloan observed that Plaintiff did not appear to be in any acute distress, though she displayed some difficulty with position and movement throughout the examination, "[o]ften holding [her] head somewhat flexed and slightly . . . bent to the right." Tr. at p. 184. Dr. Sloan noted there was some decreased range of motion in her cervical spine, some tenderness in the lumbosacral spine, limited range of motion in her shoulders, and good range of motion on her wrists and hands. *Id.* at pp. 184-85.

He further noted Plaintiff had full motor strength, good grip strength, and intact sensory and reflex function. *Id.* at p. 185. Her gait was normal and she was able to squat fully and walk heel to toe without difficulty.

In addition to the agency physicians' medical findings, the record reveals that Plaintiff's impairments did not cause functional limitations greater than that proposed by Drs. Siddiqi and Manley. First, with regard to Plaintiff's CTS, as set forth above, there was a general consensus amongst the physicians as to the non-limiting effects of Plaintiff's CTS impairment. On September 21, 1998, Dr. Powell determined Plaintiff's left hand was better and she could return to work. Tr. at p. 149. By June 2, 1999, Dr. Powell reported that McConnell had full range of motion of her wrists, her scars were well healed, and she displayed a "negative Tinel's excellent grip." *Id.* He further stated there was complete resolution of her symptoms and zero percent loss of use. *Id.* One year later, in July 2000, Dr. Sloan stated Plaintiff's motor strength was generally a five out of five and she had good grip strength. Plaintiff further reports that she cooks, washes dishes, dusts, makes the beds, sweeps, does laundry, performs minor household repairs such as changing a lightbulb, takes care of her personal hygiene, and tends to her youngest child. Such evidence supports the agency physicians' opinions regarding McConnell's physical limitations, namely, that she has no manipulative limitations in handling, fingering, and feeling, nor does she have visual, communicative, or environmental limitations.

With regard to Plaintiff's knee impairment, this Court has already reviewed the medical evidence and indicated that such impairment caused few functional limitations. In light of the benign objective medical test results, combined with Plaintiff's own testimony regarding her ability to stoop, crouch, kneel, and crawl, the ALJ properly afforded substantial weight to the agency physicians' assessment that Plaintiff had occasional postural limitations, such as climbing stairs, balancing,

stooping, kneeling, crouching, and crawling. In fact, the postural limitations imposed were not attributed to Plaintiff's knee injury, but rather her reduced range of motion in her neck, shoulders, and back.

Which brings us to McConnell's other impairments. There is no doubt in this case that McConnell suffers from severe impairments, namely degenerative changes of the cervical spine and hypothyroidism with enlarged thyroid glands. The ALJ considered McConnell's testimony regarding her daily activities as well as the fact that she did not take any pain medication nor did she experience any side effects from her thyroid medication. Tr. at p. 18. The ALJ further considered the fact that on May 22, 2001, Dr. Peckham stated that McConnell's thyroid condition was under control and that there was no specific diagnosis nor etiology for her complaints of pain. *Id.* (citing Tr. at p. 206). It is worth repeating that Dr. Peckham refused to submit any RFC assessment due to his lack of diagnosis. Also, though Dr. Sloan recognized Plaintiff had limited range of motion of the cervical spine and shoulders, no gross muscle atrophy nor hypertrophy was noted in her upper and lower extremities. *Id.* at p. 185. Similarly, she had full sensory functions, negative straight leg raising, and only slightly decreased range of lumbar motion. *Id.* at pp. 184 & 187. These findings support the agency physicians' opinions regarding Plaintiff's ability to perform the lifting requirements of light work, namely twenty pounds, and support the opinions regarding her ability to perform the standing, walking, and sitting requirements of light work. While Plaintiff testified to greater limitations than those propounded by the agency physicians, such statements were not credited in light of her extensive daily activities and the objective medical evidence, a subject we discuss next. *See infra* Part II.D.2.b.

### b. Plaintiff's Credibility

Plaintiff claims that the ALJ's analysis that her symptoms were not fully credible was contrary

to the Regulations. Pl.'s Br. at pp. 21-22.

Under 20 C.F.R. § 404.1529(a), subjective pain will be considered in determining a claim for disability to the extent in which "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Symptoms such as pain are to be considered by the ALJ at all steps of the disability determination. 20 C.F.R. §§ 404.1529(a) & (d). A claimant's statements about the persistence, intensity, and limiting effects of these symptoms are evaluated in the context of all objective medical evidence, which includes medical signs and laboratory findings. *Id.* at § 404.1529(c)(4). Once medically objective evidence is submitted, the ALJ must identify the severity of the pain and whether that pain will limit the claimant's ability to work. *Id.* at § 404.1529(c). "It is well settled that 'a claimant's subjective evidence of pain is entitled to great weight' where . . . it is supported by objective medical evidence." *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)). However, in a case where subjective symptoms are identified, "the ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged." *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987). Where the ALJ resolves to reject subjective testimony with regards to pain and other symptoms, he or she "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his [or her] determination is supported by substantial evidence." *Id.* at 608 (citing, *inter alia*, *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1045 (2d Cir. 1984)). In evaluating a claimant's complaints of pain, an ALJ must consider several factors set forth in the Regulations including:

    (i)     [The claimant's] daily activities;
    (ii)    The location, duration, frequency, and intensity of [claimant's] pain or other

symptoms;

(iii)    Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms;

(v)    Treatment, other than medication, [claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms;

(vi)    Any measures [claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)    Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

In assessing Plaintiff's credibility, the ALJ recounted Plaintiff's testimony wherein she claimed an inability to work due to constant pain radiating from her head down to the middle of her spine, pain and stiffness in her hips, as well as pain and numbness in her arms. Tr. at p. 18. The ALJ further noted Plaintiff's claim that she experiences dry skin and hair loss due to hypothyroidism and that her feet become red, itchy, and blistered if she is on them for about two hours. *Id.* The Court has reviewed the ALJ's analysis regarding McConnell's credibility and finds that the ALJ properly considered the evidence in the record as well as the factors set forth in 20 C.F.R. § 404.1529(c)(3). Specifically, the ALJ considered Plaintiff's testimony and found that she could accomplish a wide range of routine daily activities, which included cooking, driving, shopping, washing dishes, and doing the laundry. Tr. at p. 18. He further noted that McConnell did not take any prescription pain medication and experiences no adverse side effects from her thyroid medication. *Id.* And, with regard to her cervical condition, the ALJ noted that Plaintiff attended physical therapy for only a brief period of time. *Id.* The ALJ found noteworthy that, on May 22, 2001, Dr. Peckham opined that Plaintiff's thyroid condition was under control and that there was "no specific diagnosis or etiology" for Plaintiff's pain symptoms. *Id.* Based on these factors, the ALJ found Plaintiff's statements regarding her symptoms to not be fully credible. *Id.* In light of the above, we find that the ALJ reasonably concluded that the Plaintiff's

-22-

subjective complaints of pain and other symptoms were not fully credible.

### 3. Step Five - Guidelines and Vocational Expert

Lastly, Plaintiff claims that the ALJ erred by solely relying upon the Medical-Vocational Guidelines (also known as "the Grids") to determine whether Plaintiff could perform work available in the national economy. Plaintiff asserts that such reliance was in error in light of the fact that she suffers from significant non-exertional impairments and as such, the ALJ should have elicited the testimony of a vocational expert. Pl.'s Br. at pp. 23-24.

Ordinarily, if a claimant suffers solely from exertional impairments, the Commissioner meets her burden at the fifth step by resorting to the applicable Medical-Vocational Guidelines ("the Grids"). *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); 20 C.F.R. §§ 404.1569 & 404.1569a. The Grids place claimants with severe exertional impairments who can no longer perform past relevant work into categories according to their RFC, age, education, and work experience (*i.e.*, skilled or unskilled as well as transferability of skills). 20 C.F.R. Pt. 404, Subpt. P, App. 2; *see also Clark v. Barnhart*, 2003 WL 221397777, at *4-5 (E.D.N.Y. Sept. 16, 2003). Based on these factors, the Grids are dispositive on whether the claimant is disabled or not disabled and proper application thereto will obviate the need for any vocational testing. *Rosa v. Callahan*, 163 F.3d at 82 ("For a claimant whose characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he is disabled.").

Exclusive use of the Grids, however, is "inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations," *i.e.*, when a combination of exertional and non-exertional limitations exist. 20 C.F.R. § 404.1569a(d). "[W]hen significant nonexertional impairments are present or when exertional impairments do not fit squarely within grid categories, the testimony of

*-23-*

a vocational expert is required to support a finding of residual functional capacity for substantial gainful activity." *Horbock v. Barnhart*, 210 F. Supp. 2d 125, 127 (D. Conn. 2002) (citing *Bapp v. Bowen,* 802 F.2d at 605). "[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." *Bapp v. Bowen*, 802 F.2d at 603. Rather, only when a claimant's nonexertional limitations "significantly limit the range of work permitted by his exertional limitations" will sole reliance on the Grids be deemed inappropriate. *Id.* at 605-06. "A claimant's work capacity is 'significantly diminished' if there is an 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Id.* at 606 (quoted in *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).[7] Exertional limitations are strength limitations, which include the ability to sit, stand, walk, carry, push, and pull. 20 C.F.R. § 404.1569a(a)-(b); *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 n.3 (S.D.N.Y. 1996) (citing 20 C.F.R. § 404.1569a(b)). Non-exertional limitations imposed by impairments affect one's ability to meet requirements of jobs, other than strength demands including, "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. § 404.1569a(c)(1)(vi); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y.1997) (citing 20 C.F.R. §§ 404.1569a(a) & (c)).

In setting forth her argument, McConnell fails to specify exactly which non-exertional impairments significantly affect her ability to work. Nevertheless, the medical evidence supports the

---

[7] The Second Circuit arrived at this standard in reliance on sister circuit case law as well as the report accompanying the promulgation of the Grids. *See Bapp v. Bowen*, 802 F.2d at 605-06. The promulgation report made clear that nonexertional limitations may have the effect of excluding certain jobs within a particular category, however, in some cases, such exclusions are negligible in that a wide range of jobs exist within the functional level especially in light of the fact that an individual "need not be able to perform each and every job in a given range of work." *Id.* at 606 (quoting 43 FED. REG. 55,349-55,361).

ALJ's determination that McConnell's "non-exertional limitations do not significantly erode the number of unskilled jobs available at the 'light' or 'sedentary' exertional levels[.]" Tr. at p. 19.

Drs. Manley and Siddiqi noted that based upon the medical record, Plaintiff had postural limitations in that she could occasionally climb, balance, stoop, kneel, crouch, or crawl. Manipulative limitations were also noted in McConnell's ability to reach in all directions, but it was determined that she was not limited in her abilities to handle, finger, or feel. *Id.* at pp. 201-02. These opinions support the ALJ's assessment that Plaintiff was not substantially limited by her non-exertional limitations. Since we found that the ALJ's accordance of substantial weight to this assessment was proper, we similarly find the ALJ was entitled to rely upon such assessment at other steps in the disability analysis. Furthermore, by her own testimony, McConnell established that she could bend at the waist, stoop, crouch, kneel, crawl, and climb stairs, but sometimes she experienced difficulty in maintaining balance and that her only limitation in performing some of these activities, such as crouching, was due to her neck pain. *Id.* at pp. 82-83. Contrary to the agency physicians' assessment, Plaintiff testified that she had difficulty grasping objects. *Id.* at pp. 62-63. Since, however, the ALJ found Plaintiff's disabling allegations were not fully credible, to the extent her testimony conflicted with the medical evidence, such was properly disregarded. As explained throughout this opinion, Plaintiff's wide range of daily activities contradicts her allegation that her non-exertional impairments significantly limited her ability to work. *Id.* at pp. 37, 65-69 & 84-85. Thus, in finding that Plaintiff's non-exertional limitations did not have a significant impact on her ability to do work, the ALJ properly relied on the Grids. *See generally Jordan v. Comm'r of Soc. Sec.*, 194 Fed. Appx. 59, 61 (2d Cir. 2006) (unpublished opinion) (stating that in finding that the claimant's non-exertional limitations did not "significantly compromise[] her capacity to perform light work[,]" the ALJ correctly applied the Guidelines to the

claimant's condition).

Considering the record as a whole, including the opinions of the examining physicians, the state agency physician, and Plaintiff's daily activities, there is substantial evidence to support the ALJ's conclusion.

## III. CONCLUSION

In light of the foregoing discussion, it is clear that in finding McConnell was not disabled, the ALJ applied the correct legal standards and his determination is supported by substantial evidence. Thus, this Court recommends that decision be upheld.

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Commissioner's decision denying disability benefits be **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   December 18, 2007
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge