UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TONI JO McCONNELL,

                              Plaintiff,

    v.                                           6:03-CV-0521
MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Plaintiff, Toni Jo McConnell, brings this matter pursuant to 42 U.S.C. § 405 for review of the decision by the Commissioner of Social Security to deny her application for disability insurance benefits.  This action was referred to the Hon. Randolph F. Treece, United States Magistrate Judge, for a Report-Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

        The Report-Recommendation, filed on December 18, 2007, recommends that the Commissioner's decision denying Social Security benefits be affirmed and finds that the ALJ's conclusions were supported by substantial evidence.  Plaintiff has filed objections to the Report-Recommendation.

**I.**        **BACKGROUND**

        **a.**  **Procedural History**

        The Social Security Administration first denied Plaintiff's claim on September 21, 2000.  Admin. Transcript [hereinafter Tr.] at 90.  On September 26, 2000, Plaintiff

filed a timely request for reconsideration. This was denied on December 18, 2000. Tr. at 94-95. On December 29, 2000, Plaintiff requested a hearing before an Administrative Law Judge (ALJ). Id. at 98. The hearing occurred on August 22, 2001 before ALJ John M. Lischak. Id. at 30-87. ALJ Lischak rendered a decision on December 7, 2001, concluding that Plaintiff suffered from severe impairments, specifically, "degenerative changes of the cervical spine and hypothyroidism with enlarged thyroid glands." Id. at 15-21. The ALJ concluded that, although Plaintiff could not return to her prior job as a factory worker, she did have a residual functional capacity (RFC) that allowed her to perform "light" or "sedentary" work. Id. The Appeals Council affirmed ALJ Lischak's decision and Plaintiff filed this action seeking review. Id. at 5.

    **b.  ALJ's Analysis**

In his analysis, the ALJ cited the five-step evaluation process set forth in 20 C.F.R. § 404.1520. In the first step, the ALJ determines whether the claimant has engaged in "substantial gainful activity" since the alleged onset of the disability. 20 C.F.R. § 404.1520(a)(4)(i). If not, the next inquiry is whether the claimant suffers from a medically determinable "severe" impairment established by medical evidence including signs, symptoms and laboratory findings. Id. at § 404.1520(a)(4)(ii); § 404.1528. Symptoms alone, however, are not sufficient. Id. at § 404.1528. Severity is defined as significantly limiting an individual's physical or mental ability to do basic work activities. Id. at § 404.1521(a). Should the claimant be suffering from a medically determinable severe impairment, the third step is to determine whether the impairment is listed, or is equal to any listing, in Appendix I, which specifies over 100

medical conditions that would prevent an individual from performing "substantial gainful activity." Id. at § 404.1520(a)(4)(iii); § 404.1525(a). If so, the individual is considered "disabled" under the Act and the inquiry ends. Id. If not, the inquiry continues to the last two steps to determine whether the claimant has the RFC to perform any past relevant work or other jobs that exist in the national economy, considering the claimant's age, education and work experience. Id. at § 404.1520(a)(4)(iv)-(v); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

In this case, ALJ Lischak determined that Plaintiff had not engaged in "substantial gainful activity" since she stopped working on March 6, 2000. Tr. 16. In the second step, the ALJ found that Plaintiff suffered from "degenerative changes of the cervical spine and hypothyroidism with enlarged thyroid glands" and characterized them as severe impairments under the Act. Id. at 17. The ALJ found that Plaintiff's bilateral carpal tunnel syndrome (CTS) was not severe. Id. Despite details of a knee injury in the record, the ALJ did not consider or mention it in his findings. Id. Finally, because those impairments found to be severe were not listed in Appendix I, the ALJ continued the inquiry and determined that, although Plaintiff could not return to her prior job as a factory worker, she did have an RFC that allowed her to perform "light" or "sedentary" work. Id. at 17-19.

## II.    STANDARD OF REVIEW

When objections to a magistrate judge's Report-Recommendation are lodged, the Court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." See 28

U.S.C. § 636(b)(1).  After such a review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions."  Id.

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner applied the correct legal standards and whether his or her findings were supported by substantial evidence.  Knapp v. Apfel, 11 F. Supp. 2d 235, 237 (N.D.N.Y. 1998) (citing Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997); Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982)); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991) (citing Havas v. Bowen, 804 F.2d 783, 785 (2d Cir. 1986); Wagner v. Secretary of HHS, 906 F.2d 856, 860 (2d Cir. 1990)).  Substantial evidence is defined as "more than a mere scintilla" and requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (internal citations omitted)).

## III.  DISCUSSION

### a.  Severity of Plaintiff's Carpal Tunnel Syndrome

Plaintiff contends that the ALJ erroneously failed to characterize her CTS and knee impairment as severe.  Courts have held that this step is limited to "screen[ing] out *de minimis* claims."  Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995).  As stated above, severity turns on a claimant's ability to do "basic work activities," which include "walking, standing, sitting, lifting, pushing, pulling, reaching,

carrying, or handling . . . ." 20 C.F.R. §§ 404.1521(a), (b). The plaintiff, at this point, has the burden of showing that the impairments "cause[] functional limitations" such that she cannot engage in these activities. Burger v. Barnhart, 476 F. Supp. 2d 248, 254 (W.D.N.Y. 2007) (citing Rivera v. Harris, 623 F.2d 212, 215-16 (2d Cir. 1980); Levos v. Secretary of Health and Human Services, 516 F. Supp. 273, 275 (S.D.N.Y. 1981)). The "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe. Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y. 1995).

ALJ Lischak concluded that although Plaintiff had a history of bilateral CTS, her surgeries in 1998 corrected the problem. Tr. at 17. He further noted that Plaintiff was no longer receiving treatment for her wrists. Id. He, thus, determined that Plaintiff's CTS was "non-severe" under the Act. Id.

Plaintiff began treatment for CTS in 1998 with Dr. Powell, a physician from the North Country Orthopaedic Group (NCOG). Id. at 146. Dr. Powell determined that Plaintiff would likely receive relief from a bilateral carpal tunnel release. Id. at 147. She underwent surgeries of both wrists in May and July of 1998. Id. at 148.

In August of 1998, Plaintiff returned to Dr. Powell for treatment after falling and contusing her left hand. Id. at 149. Dr. Powell found swelling and tenderness and concluded that while Plaintiff's CTS had "settled down," he wanted her to strengthen the hand before "she [went] back to full duty." Id. at 149. In September, Dr. Powell considered it "safe for her to return to her work." Id.

On August 3, 1999, Plaintiff returned complaining of pain in her wrists. Dr. Powell noted, however, that the exam of her wrist was "very benign." Id. at 150. On

October 19, 1999, Dr. Fish, an orthopedist at NCOG, examined Plaintiff's wrist after she complained of soreness in her right hand after wrestling with her son. Id. at 151. Dr. Fish found tenderness and placed Plaintiff's arm in a short arm cast for four to six weeks, and concluded that Plaintiff could continue working during this time. Id. Given the injury, Dr. Fish stated that Plaintiff had "reasonably good wrist range of motion." Id. On November 12, 1999, Plaintiff's exam reflected "no appreciable tenderness in wrist" and by November 24, 1999, Plaintiff had "full range of motion" and no complaints. Id. at 152. Similarly, an assessment completed by Dr. Sloan, a consultive orthopedist, on July 27, 2000 also indicated that Plaintiff had "good range of motion" in the wrists and hands. Id. at 183.

While Plaintiff testified before ALJ Lischak that her ability to do housework was somewhat limited, especially vacuuming and activities that required heavy lifting, she stated that she could perform many activities, such as doing dishes, cooking, driving, laundry, and small home repairs such as changing light bulbs. Id. at 65-66. Furthermore, it appears that the pain caused by these activities is not necessarily caused by Plaintiff's CTS. After a visit in August of 1999, Dr. Peckham could not determine whether Plaintiff's symptoms were coming from her neck or from "residual CTS." Id. at 150. Given Plaintiff's apparent recovery from her surgeries and injuries, the fact that she was told she could return to work, and her own assessment of her abilities, the Court concludes that ALJ Lischak's finding that Plaintiff's CTS was not sufficiently severe is supported by substantial evidence.

### b. Severity of Plaintiff's Knee Impairment

Plaintiff also contends that the ALJ erroneously failed to consider Plaintiff's knee impairment. Plaintiff was first treated for a knee injury on September 28, 2000 after hearing three pops in her left knee while wrestling with her son. Id. at 192. The physical exam demonstrated slight hyperextension, but this appeared symmetrical. Id. The x-rays showed no obvious fractures and a normal alignment. Id. Dr. Peckham of NCOG recommended no specific treatment, as the injury seemed to be getting better on its own. Id. On November 17, 2000, an MRI suggested "some degenerative changes in her menisci," but did not indicate a significant tear that would require surgery. Id. at 195. Dr. Peckham also suggested possibly undergoing further treatment if Plaintiff did not improve symptomatically. Id.

Just because Plaintiff injured her knee does not, alone, justify characterizing the impairment as severe. Coleman, 895 F. Supp. at 53. The record lacks any evidence that Plaintiff's knee injury impaired her ability to perform basic work activities. Rather, Plaintiff testified that she was able to stoop, crouch, kneel, crawl and climb stairs and small step ladders. Tr. at 60-61. Plaintiff testified that these activities might cause pain in her neck, but did not mention her knee. Thus, the Court concludes that ALJ Lischak's failure to consider Plaintiff's knee impairment was not in error.

### c. ALJ's Assessment of Plaintiff's Residual Functional Capacity

#### 1. Treating Physician Rule

Plaintiff asserts that ALJ Lischak erred by failing to give controlling weight to a conclusion made by one of her treating physicians (Dr. Peckham of NCOG) that

Plaintiff should be on "total disability" and, instead, adopted the agency physician's conclusions regarding Plaintiff's RFC.  Plaintiff's Objs. at 8-9.

In his analysis, ALJ Lischak found that Dr. Peckham's conclusion that claimant should be on "total disability" could not be given substantial weight because it was not supported by objective medical evidence.  Tr. at 18.  He further reasoned that the determination of whether a claimant is "disabled" can only be made by an ALJ.  Id.

ALJ Lischak, thus, adopted the Agency physicians' conclusions that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk up to six hours per day and sit up to six hours per day, push and/or pull twenty pounds occasionally and ten pounds frequently, reach in all directions on a limited basis, and climb, balance, stoop, kneel, crouch or crawl occasionally.  Tr. at 17.  Based on this assessment, ALJ Lischak determined that while Plaintiff could not perform "past relevant work," she could perform "light" and "sedentary" work, based on her RFC, age, experience and educational background.  Id. at 19.

In determining a claimant's RFC, the ALJ can consider medical opinions regarding the "nature and severity" of a claimant's impairments, the claimant's residual abilities despite these impairments, and any physical or mental restrictions.  20 C.F.R. § 404.1527(a)(2).  The Treating Physician Rule recognizes that treating physicians are "most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone."  20 C.F.R. § 404.1527(d)(2).  Therefore, when a treating physician's opinion is "well-supported by medically acceptable . . . diagnostic techniques and is not inconsistent with the other substantial

evidence in . . . the record," the rule dictates that these opinions will be controlling. Id. If the opinion is not given controlling weight, the ALJ may determine how much weight it should be afforded by looking at: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the extent of support from relevant evidence; 4) the consistency with the whole record; 5) the specialization of the treating physician; and 6) other factors. 20 C.F.R. § 404.1527(d)(2).

Furthermore, the ultimate determination of whether a person meets the statutory definition of disabled is left with the Commissioner; the ALJ is under no duty to afford controlling weight to any opinion that makes such a determination. 20 C.F.R. § 416.927(e)(1).

Dr. Peckham's conclusion that Plaintiff should be on "total disability" must be taken in light of the context in which it was made. First, it was stated in an addendum to his physician's notes within the context of being treated for her knee. Tr. at 194. Further, it appears the note was made only after Plaintiff was advised by another physician that she should go back to work. Id. This suggests that Dr. Peckham's comment was intended to be temporary in nature and was not meant to refer to Plaintiff's overall condition.

Furthermore, the record lacks any medical opinions from treating physicians regarding Plaintiff's abilities despite her impairments. Plaintiff's assertion that "not one physician who actually examined plaintiff concluded that she could return to work" must also be taken in context. Plaintiff's Objs. at 8. First, the only treating physician that suggested that Plaintiff not go to work was Dr. Peckham, and this was in light of

Plaintiff's knee injury, which appears to have resolved itself as there is no indication of a continuing problem after November, 2000.  Second, Plaintiff's job at the time of her treatments required heavy lifting and substantial walking and standing.  Tr. at 40-44.  In his assessment, ALJ Lischak essentially agreed with Plaintiff that she could not return to her job due to the severity of her condition.  Finally, and possibly most dispositive, is the fact that Dr. Peckham refused to fill out a Residual Capacity Form.  Tr. at 237.  This form, supported by objective medical evidence, would have given ALJ Lischak more of an opportunity to assess Plaintiff's ability to perform basic work activities.  Recognizing this, ALJ Lischak kept the record open for submission of this type of evidence.  Tr. at 30-31.  However, when Dr. Peckham was unwilling to fill it out, he was left with the medical opinion of the agency physicians, Drs. Manley and Siddiqi, regarding Plaintiff's abilities.  The record lacks any other medical opinions indicating Plaintiff's abilities to perform basic work activities.

  Finally, Plaintiff's testimony regarding her ability to perform daily activities suggests that she can perform "light" or "sedentary" work.  On May 22, 2001, Dr. Peckham concluded that Plaintiff's thyroid condition was "under control" and that specific diagnosis, treatment or etiology were undetermined.  Tr. at 206.  Dr. Sloan's examination, upon which the agency physicians relied, suggested "some decreased range of motion" in the cervical spine and "limited range of motion" in the shoulders.  Id. at 184.  There was "some" and "mild" tenderness in the cervical and thoracic spine, respectively.  This assessment does not suggest that Drs. Manley and Siddiqi were unreasonable in determining Plaintiff's capabilities or that ALJ Lischak was unreasonable in determining that Plaintiff had the capacity to perform "light" or

"sedentary" work. Thus, the Court agrees with Magistrate Judge Treece's conclusion that ALJ Lischak's decision to not give Dr. Peckham's conclusion about Plaintiff's "total disability" controlling weight, but rather to adopt the agency physicians' RFC assessment was supported by substantial evidence from Dr. Peckham, Dr. Sloan and the agency physicians.

### 2.  Plaintiff's Credibility

The ALJ also has discretion to determine a claimant's or other witnesses' credibility regarding the claimant's subjective complaints of pain. Mimms v. Heckler, 750 F.2d 180, 185-86 (2d Cir. 1984). After assessing the claimant's testimony, the objective medical evidence, and other factors, the ALJ may accept or reject a claimant's subjective testimony. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (2007); Martone v. Apfel, 70 F. Supp. 2d 145, 151 (N.D.N.Y. 1999). When a claimant's testimony is rejected, the ALJ must specify reasons for doing so such that a reviewing court can determine whether those reasons were legitimate and supported by substantial evidence. Martone, 70 F. Supp. 2d at 151 (citing Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).

The Plaintiff correctly asserts that the ALJ may not *ignore* subjective allegations of pain which are supported by the establishment of a "medically determinable impairment which could reasonably be expected to produce th[at] type of pain." Diaz v. Bowen, 664 F. Supp. 725, 730 (S.D.N.Y. 1987) (citing Marcus v. Califano, 615, F.2d 23, 27-28 (2d Cir. 1979)). However, the ALJ does not have to accept these allegations without exception. Rather, the ALJ balances the objective

medical evidence, the claimant's daily activities, medical opinions and other evidence. See Diaz, 664 F. Supp. at 730 (citing Losco v. Heckler, 604 F. Supp. 1014, 1018 (S.D.N.Y. 1985); Martone, 70 F. Supp. 2d at 151.

In considering Plaintiff's symptoms, ALJ Lischak compared Plaintiff's subjective complaints to the objective medical evidence, along with Plaintiff's testimony regarding her ability to do daily activities, and concluded that Plaintiff's complaints were not fully credible. Tr. at 18. ALJ Lischak cited to Social Security Ruling 96-7p which specifies the factors to consider when determining a claimant's credibility. Id. These include 1) the claimant's daily activities; 2) the location, duration, frequency and intensity of the pain or other symptoms; 3) aggravating factors; 4) the type, dosage, effectiveness and side effects of medication; 5) treatments other than medication used to relieve pain or other symptoms; and 6) measures other than treatment used to relieve the pain or other symptoms. Id. ALJ Lischak reasoned that Plaintiff 1) was able to perform a wide range of daily activities; 2) experienced no adverse side effects from medications; 3) attempted physical therapy only for a brief period; and that 4) even Dr. Peckham could not determine a specific diagnosis or etiology for Plaintiff's symptoms. Id. The Court finds that ALJ Lischak's conclusion that Plaintiff's subjective allegations were not consistent with the record or the objective medical evidence was reasonable and supported by substantial evidence.

### d.  ALJ's Use of Medical-Vocational Grid Guidelines

Once it is determined that a claimant cannot perform past relevant work, the Medical-Vocational Guidelines (Grids) are used to determine whether a claimant can perform other jobs that exist in the national economy, based upon her RFC, age,

education and experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2. The Grids, however, can be relied upon exclusively only when the claimant is suffering solely from exertional impairments. Id. If the claimant suffers from non-exertional limitations, i.e. reaching, handling, stooping, climbing, crawling or crouching, the Agency may require the use of a vocational expert if these impairments "significantly limit" the range of work a claimant can perform. Bapp v. Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986); 20 C.F.R. § 404.1569a(c)(1)(vi). This occurs when the non-exertional impairment imposes an "additional loss of work capacity beyond a negligible one." Bapp, 802 F.2d at 606 (quoted in Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996). When it is found that the individual cannot perform the "full range of sedentary work," an individualized assessment may be required to determine whether he/she is "disabled." 20 C.F.R. Pt. 304, Subpoint. P, App. 2, § 201.00(h)(3).

ALJ Lischak found that Plaintiff's RFC was consistent with the ability to perform jobs at the "light" and "sedentary" exertional levels and that her non-exertional limitations did not "significantly erode the number of unskilled jobs available" to her. Tr. at 19. He rendered her not "disabled" after considering her age of 44 years ("younger person" per the Grids), her ninth grade education, and her past experience as a factory laborer. Id.

In this case, Plaintiff asserts that she cannot perform the full range of "sedentary" work. As such, Plaintiff claims that ALJ Lischak was required to make an "individualized assessment" whether she was disabled rather than relying solely on the Grids. Plaintiff's Objs. at 20. Plaintiff, however, incorrectly assumes that *any* inability to perform "sedentary" work requires a departure from the Grids. Rather, the "inability

to perform a full range of sedentary work does not necessarily equate with a finding of 'disabled.'" 20 C.F.R. Pt. 404, Subpoint. P, App. 2, § 201.00(h)(3). Thus, ALJ Lischak's conclusion that Plaintiff's non-exertional limitations "do not significantly erode the number of unskilled jobs available" is supported by objective medical evidence and Plaintiff's testimony as to her ability to perform routine daily tasks. ALJ Lischak, thus, correctly applied the Grids in this case.

Plaintiff next contends that she suffers from many non-exertional limitations, such as an inability to 1) sit for any length of time without changing positions, 2) elevate her arms for more than five minutes, or 3) turn her head without pain, that combined with her exertional limitations, require a departure from the Grids. Plaintiff's Objs. at 20-21. The non-exertional limitations[1] evident from the RFC assessment[2] limit her ability to reach in all directions and limit climbing, balancing, stooping, kneeling, crouching and crawling to an occasional basis. However, these limitations merely specify the extent to which Plaintiff can perform these activities and do not necessarily preclude Plaintiff's abilities to perform "sedentary" work. Given Plaintiff's age, education, work experience, RFC, testimony of her ability to do certain daily activities, and the finding that Plaintiff's subjective allegations were not fully credible, the Court finds that ALJ Lischak's conclusion that Plaintiff's non-exertional limitations did not significantly limit the range of work she could perform was supported by

---

[1] Here, the non-exertional limitations include limited or reduced range of motion in her neck, shoulders and back.

[2] The Court already determined the RFC assessment completed by the agency physicians was adequately relied upon.

substantial evidence, did not prevent the application of the Grids in this case and, thus, did not require a vocational expert.

## IV.     CONCLUSION

For the foregoing reasons and the reasons asserted by Magistrate Judge Treece in his Report-Recommendation, the Court finds that the ALJ correctly applied the legal standards and his conclusion was supported by substantial evidence. Thus, the Court holds that Plaintiff is not disabled under the Act and the decision of the Commission is **AFFIRMED**.

IT IS SO ORDERED.

Dated: March 27, 2008

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge